### HERZ STRAW CO., Inc., v. SMITH et al.
### No. 404.

Circuit Court of Appeals, Second Circuit.
July 24, 1931.

Emery, Booth, Varney & Whittemore, of New York City (Lucius E. Varney and Nichol M. Sandoe, both of New York City, of counsel), for appellant.

Fritz Ziegler, Jr., of New York City, for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The patented machine makes drinking straws of paper, rolled upon a mandrel and gummed, forming a continuous tubing of the required bore, which it is necessary to cut into lengths. As it leaves the mandrel the tube is fragile and without support, save its own rigidity. It is therefore necessary that to sever it any cut must be of great enough speed to allow the mere inertia of the mate-

rial to withstand the blow. Even so, it is not possible to cut the tube clean, and, though the patent professes to avoid it, the ends of the tubes are mashed out of shape, so that they must be later reconditioned for service. The patent describes the whole machine, including the rolling mechanism which turns two tapes of paper into a gummed roll upon the mandrel, and pushes it forward as made to the outlet where it is to be cut. For our purposes the only important part is the cutter and its actuating devices, and while it is hard to give an intelligible account of these without figures, some attempt must be made.

As the tube comes off the mandrel it passes through holes in two guides in series, and the knife by a circular slice cuts it as it leaves the second guide. The blade is mounted on a carrier, placed below the path of the tube, not so far away that its end will not reach it. The carrier is a circular collar, loosely mounted upon a rotating shaft to the other end of which is fixed a second collar, geared. When the machine is in operation the gear upon the fixed collar, meshing with other parts not necessary to describe, rotates the shaft at high speed. So far as we can see, the shaft might rotate the carrier as well, since there must be some friction in their contact surface, but nothing is said of this, and it may be disregarded. In any event, a mechanism, consisting of pawls and latches, holds the carrier in place until the latches are automatically released at the moment when the proper length of tubing has come from the second guide. Then the carrier, and with it the knife blades, are set in motion by another device which is the heart of the invention.

From the fixed collar extends a spring, whose other end is attached to the carrier; it is the only connection between the two and is wound around the shaft. While the carrier is held in place by the pawls and latches, the rotation of the fixed collar winds up the spring and puts tension upon the carrier, to rotate it in the same direction. Except for the release, continued rotation of the shaft after the spring was wound tight, would break it, and the action of the latch must be so timed as to throw it out at that moment. Thereupon the carrier takes up its own rotation, the resultant of the continued rotation of the fixed collar and the stored energy of the spring. The knife blades sweep with great swiftness across the tube and cut off a piece of required length. When the carrier again reaches the latch, then automatically

reset, the spring begins once more to store its energy against a second release. Thus the blades proceed by a series of pauses interspersed with quick revolutions.

The only claim in suit is number eighteen, which reads as follows:

"In a tube forming machine, in combination, means for forming a substantially rigid tube, means for continuously feeding the formed tube from said forming means, a rotary cutter mounted to traverse the path of movement of the tube in a fixed plane, a rotary drive means therefor, a spring operatively connecting the drive means and cutter, and means for inhibiting the rotation of the cutter to cause a compression of the connecting spring and then releasing the cutter to cause a quick cutting action thereof under the influence of the said spring, whereby the tube may be severed during the forward movement thereof without distorting or buckling the same."

The defendant's machine is for the same purpose and has a tube forming and feeding mechanism and a cutter. Instead, however, of these being all geared together and driven by one source of power, they are separate, each driven by a different motor, though necessarily in synchrony. We are concerned only with the cutting device. The tube comes out of a guide as in Conti's machine, and is cut off by a breaker-bar, a blunt knife which mashes it, but moves fast enough to break off the piece. It acquires this speed from the rotation of a motor-driven shaft, to the end of which is fixed a round plate at one side of the guide from which the tube emerges. One end of the breaker-bar is pivoted near the edge of the plate, and it would flap loosely back and forth between two stops, except that it is prevented by a spring engaging a lug upon it, and holding it against one of the stops. The end of the breaker extends well beyond the edge of the plate to engage the tube, but before it reaches this in its revolution, it meets a stop. Further movement of the shaft is then against the spring, and causes the breaker to begin to rotate backward on its pivot in a direction opposite to the rotation of the plate. This shortens the radial distance between the shaft and the end of the breaker, so that it finally slips off the stop. When it does, like the plaintiff's knife, it sweeps across the tube under the combined action of the rotation of the plate and the stored energy of the spring.

On this showing the District Judge declared the patent not infringed, because there was but one mechanism for forming and ad-

vancing the tube. In this we do not agree. Language, in a patent as elsewhere, means what reasonable people would mean who use the words in the circumstances in question. It is incredible that any one, seeking to procure a monopoly for certain features disclosed in the specifications at bar, should intend to cover, not the only mechanism described, but another which can only be imagined. The phrase "means for forming a substantially rigid tube," and "means for continuously feeding the formed tube," might demand separate devices were it possible to find any, but in this patent either it covers the thing disclosed, or it means nothing. The defendant's machine in this regard is like the plaintiff's, and, if the case rested there, we should be obliged to reverse. We think, however, that the result was right for another reason, which seems to have been also a ground of the decision below; that is, that the defendant does not have "a spring operatively connecting the drive means and cutter."

The art had struck not far from the patented invention in several instances. Thus, Turner, 680,086 (1901), had a cutter very like the disclosure except that, when released, its movement was due only to the friction between the carrier and the shaft. Being addressed to articles of rubber no greater speed was necessary, for delay would not result in damaging the advancing work, as it would a frangible drinking straw. White, 460,695 (1891), was an instance of a step by step storing of energy in a spring, which operated a cutter, when unlatched, though there was no continuous drive and the result depended wholly on the spring. Otto, 1,044,687 (1912), provided for the speed of his knife to be increased by eccentric gears without the aid of a spring; it is not very close. Hren, 1,261,538 (1918), was much nearer. In this the blade was fixed to a carrier, which was itself loosely mounted on a revolving shaft. A collar was also mounted upon the same shaft, not rigidly· it is true, because there was a frictional journal for it, which would allow the shaft to rotate though the collar was stopped. In this it was unlike Conti's collar, and the mechanism would not break if the latch on the carrier was not released at the exact moment of full compres-

sion of the spring. But except for this, and for the fact that the knife was given a possible added movement along the path of the work, the operation was the same. When the carrier was stopped by a latch, the continued rotation of the collar compressed the spring and kept it so, until the latch was thrown out. Upon its release the carrier began to rotate under the impulsion not only of the spring, but of the collar, whose friction grip upon the shaft, in that phase, was enough to make collar and shaft a single member. Thus, so far as concerns the cutting mechanism as such, the only difference between the patent in suit and Hren is in the machine of which it was a part, and the particular mechanical embodiment of the idea common to both.

We cannot attribute invention to the mere notion of putting a cutter into a machine to make drinking straws; it is a necessary element if these are made in a continuous tube. The various devices for cutting a continuous web into sections, of which the art was full, were always at hand, so far as they would serve. What Conti wanted and got, was an exceptionally quick cut, but again that was a part of the obvious desiderata, when dealing with such a fragile article. If the art afforded such, it took nothing but industry to select one. Hence the cutter in the setting in which he put it, was no better than the cutter simpliciter. It follows that whatever limits the scope of the claim as to the cutter, limits it generally. We need not say that it is invalid, nor do we; the especial organization Conti devised was ingenious, and may entitle him to protection, but it is clear from what we have said of Hren that he may not claim a monopoly of all cutters whose speed is the resultant of the continuous movement of a rotating member and the compression of a spring. Hren is much closer to his disclosure than the defendant's machine. If we are to save the claim at all, we must read into it so much of the specifications as leaves it too narrow to cover the defendant's machine. In these circumstances verbal correspondence between the claim and the infringement is immaterial.

We need not therefore consider the other points raised; it is enough that the claim cannot at once be valid and infringed.

Decree affirmed.